IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

UNITED STATES OF AMERICA

VS.                                                      CRIMINAL ACTION NO. 2:08cr1-KS-MTP

TYRUS COBB JONES

ORDER

This cause is before the Court on Defendant's Motion to Suppress Evidence [15]. The Court has considered the motion and the Memorandum in Support of the Motion [19] and the Memorandum in Opposition [21] to the motion and the Court finds that the Motion to Suppress should be overruled for the hereinafter stated reasons.

**FACTUAL BACKGROUND**

This case arises out of a traffic stop that occurred at approximately 1:00 p.m., February 3, 2006, in Jones County, Mississippi on Interstate Highway 59 at approximately mile marker 95. Trooper Darrell Woodson observed a white Toyota Camry driving on said highway without a license plate and instigated a traffic stop. The driver complied with the blue lights and pulled over on the right shoulder, having his left tires approximately on the "fog line." When Trooper Woodson went up to the car he went to the passenger side, because if he had approached the driver's side he would have been standing in the traveled lane of the interstate. In the meantime, Defendant Jones had opened the driver's door which swung over the fog line and into the traveled portion of the interstate and Jones turned to his left with his legs out of the vehicle onto the roadway. As Trooper Woodson was talking to the passenger, Trooper Ricky Lott arrived to "backup" Trooper Woodson and when Trooper Lott approached the vehicle Trooper Woodson asked him to take the driver (the defendant) out of the vehicle.

Because of the location of the vehicle extending into the traveled portion of the highway, Trooper Lott conducted his business from the right hand side of the vehicle and, then as Jones went to the rear of the car, he followed him around, closed the passenger door and began talking with Jones at the rear of the vehicle. During this period Trooper Lott noticed that the defendant was staring back at Trooper Woodson with an "odd stare on his face." Trooper Lott testified that his normal course, when he removes someone from a vehicle for a traffic stop, is to first pat the person down for officer's safety. Almost immediately after beginning the patdown, Officer Lott discovered a 40 caliber Smith and Wesson pistol in the pocket of the defendant.

## TWO-PRONG TEST

In order for the search to be proper two pre-requisites must be met:

1. Was the traffic stop legal; and

2. Was the "patdown" of the defendant constitutional.

Neither party seriously questions the legitimacy of the stop. The defendant did not have a tag and it was proper to pull over the vehicle.

The second prong of the test is not as easily met by the Government. A traffic stop is a traffic stop and without more cannot be turned into an extended seizure of the driver. The detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *United States v. Brigham*, 382 F. 3d 500, 506 (5th Cir. 2004) (*en banc)*. Citing *United States v. Dorch,* 199 F. 3d 193, 200 (5th Circ. 1999).

Based on the facts before the Court, there are three questions that must be answered.

**Question 1.** Is a "frisk" as a matter of course appropriate in a traffic stop?

What is involved in a frisk is, as Trooper Lott testified, his placing his left hand on the

shoulder of the subject and using his right hand to work his way down the body of the person feeling for weapons.  A frisk is, without a doubt, an invasive touching that no one would choose to endure voluntarily.  Often the subjects of the frisk and officers are of different genders, adding to the discomfort of this procedure. This Court concludes that the applicable case law does not permit a frisk as a matter of course in a traffic stop.  The officer does have the right to request the driver to remove himself from the vehicle, but does not have the automatic right to conduct a frisk.

> **Question 2.** Does the way that Trooper Lott describes the defendant as staring back at Trooper Woodson constitute articulable suspicion that would justify the "frisk?"

The testimony of Trooper Lott is as follows:

> That he was sitting in the seat with his feet on the white line - on the fog line, as they call it.  That he was staring back at Trooper Woodson, you know, just had an odd stare on his face.
>
> QUESTION: What did you do?
>
> ANSWER: I approached the vehicle from the passenger side because, like I said, he was almost in the highway. I told him to step to the rear of the vehicle. As he exited the vehicle I went around the front of his car because of his proximity to the highway just so I could keep an eye on him for his safety.  And as he exited the vehicle, I closed the driver's door and stepped to the rear of the vehicle with him.
>
> QUESTION: And at what point in time did you actually pat him down, or did you pat him down?
>
> ANSWER: As we got to the rear of the vehicle and, it is my practice on everyone I ask to exit the vehicle, I pat them down for officer's safety.

The "odd stare" is the only justification articulated by Trooper Lott. This Court concludes that the "odd stare" is not sufficient articulated suspicion, without more, to constitute a

reasonable suspicion to justify a frisk.

      **Question 3.**    Does the "totality of the circumstances" justify the "frisk?"

Courts have recognized that traffic stops are "especially fraught with danger to police officers." *Michigan v. Long*, 463 U.S. 1032, 1047, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). The risk of harm to both the police and the occupants [of a stopped vehicle] is minimized, "'if the officers routinely exercise unquestioned command of the situation.'" *Maryland v. Wilson*, 519 U.S. 408, 414, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997). *Arizona v. Johnson*, 129 S. Ct. 781, 786 (U.S. 2009). The *Johnson* cites three decisions that portray the application of *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1 868, 20 L. Ed 2d 889 (1986), to traffic stop settings. *Pennsylvania v. Mimms*, 434, U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1997) (*Per Curiam*), *Maryland v. Wilson*, 159 U.S. 408 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997); and *Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). In the *Mimms* case the officer noticed a bulge in the pocket, which is not applicable to the current case. The facts of the current case and *Brendlin* cases are also not exactly on all fours with the facts of the case that is before the Court. A traffic stop is a potentially dangerous event for a police officer. In the current case the stop occurred in a rural area on an interstate highway, with the driver, for some reason, parking unreasonably close to the fog line. He opened his door, in spite of the officer going to the other side, and left it extending over the traveled portion of the highway and turned and put his feet out of the vehicle and into the highway. He stared at Trooper Woodson in a manner that was questioned by Trooper Lott and, at the time, Trooper Lott had complete authority to require him to exit the vehicle and proceed to the rear of the vehicle for questioning. Under all of the circumstances then existing, was the submission to a brief patdown for officer's safety unreasonable?

This Court concludes that taking all of the circumstances into consideration, that the officer had articulable, if not articulated, reason to be concerned for his safety and the brief patdown was not unreasonable and, therefore, did not violate the Fourth Amendment. Officer safety is a paramount concern in any traffic stop and when the facts of this case, including the de minimis amount of time for the frisk are considered by this Court, the Court finds that the Motion to Suppress should be overruled.

IT IS, THEREFORE, ORDERED that the Motion to Suppress [15] be and the same is hereby **overruled.**

SO ORDERED on this, the 18th day of March, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE